# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

FRED ABERNATHY,

      *Plaintiff,*

vs.

      Case No. 12-2144-EFM

SOUTHERN STAR CENTRAL GAS
PIPELINE,

      *Defendant.*

## MEMORANDUM AND ORDER

In this case, Plaintiff Fred Abernathy asserts claims for retaliatory termination and refusal to rehire under the Age Discrimination in Employment Act of 1967 ("ADEA")[1] and Title VII of the Civil Rights Act of 1964 ("Title VII").[2] Before the Court is the Motion for Summary Judgment (Doc. 38) filed by Defendant Southern Star Central Gas Pipeline ("Southern Star"). For the reasons stated herein, the Court grants Southern Star's motion for summary judgment.

---

[1] 29 U.S.C. § 621, et seq.

[2] 42 U.S.C. § 2000e, et. seq.

# I.    Factual and Procedural Background[3]

Defendant Southern Star is a natural gas transmission and storage corporation organized under the laws of Delaware, with its principal place of business in Kentucky.  Plaintiff Fred Abernathy is a Kansas resident who worked for Southern Star from January 14, 2008, until his termination on March 23, 2011.  Southern Star owns easements for the majority of its operations and interacts with the landowners associated with these easements through various land representatives.  These land representatives are responsible for negotiating landowner agreements, resolving landowner disputes, and addressing other issues that arise in connection with Southern Star's easements.  Over the years, Southern Star has retained land representatives in fluctuating proportions of employees and independent contractors.  The amount and character of work in Southern Star's land department changes from season to season.  Historically, construction projects begin in March, often making spring and summer the busiest seasons for land representatives.

## A.  Plaintiff's Employment and First EEOC Charge Against Southern Star

Plaintiff began working for Southern Star as an independent contractor land representative on August 7, 2007.  Plaintiff continued to work as an independent contractor until Southern Star hired him as an employee land representative on January 14, 2008, when he was forty-seven years old.  In the course of his employment with Southern Star, Plaintiff was disciplined on two occasions for hostile and abusive interactions with coworkers, including a last-chance written warning issued on November 16, 2009.

---

[3] In accordance with the procedures for summary judgment, the facts set forth herein are uncontroverted for the purposes of the present motions before the Court.  If controverted, the facts are related in the light most favorable to Plaintiff, who opposes Southern Star's dispositive motion.

At all times relevant to this dispute, Southern Star maintained an Equal Employment Opportunity Statement and Non-Discrimination Policy (the "Policy"), which prohibited unlawful discrimination and harassment. The Policy included procedures for employees to report unlawful behavior, and it prohibited retaliation against employees who made good-faith reports under those procedures. The Policy also provides that "[i]ntentionally filing a false report of a violation of this policy will be deemed a violation of this policy."[4]

On March 26, 2010, Plaintiff filed a charge of discrimination against Southern Star with the Equal Employment Opportunity Commission ("EEOC"). In this charge (the "First Charge"), Plaintiff accused Southern Star of age discrimination for subjecting him to discipline for verbal outbursts while giving younger employees more deferential treatment. Plaintiff also claimed that this discipline constituted retaliation for previously reporting another employee's ethics violations. On May 10, 2010, Southern Star's Human Resources Manager and General Counsel, Gayle Hobbs, prepared and submitted a response to the First Charge, indicating that "[t]he Company vehemently denies the Charge."[5] When asked what he thought when Plaintiff filed his First Charge in 2010, Vice President of Operations for Southern Star's Kansas City division, Richard Reischman, responded, "Well, I didn't think much of it in the fact that everybody has a right to do what they feel is right. So I knew it would just work its way out."[6] When Southern Star's President and Chief Executive Officer, Jerry Morris, learned of Plaintiff's First Charge, he found it "very surprising" and "couldn't see what the basis for it might be."[7]

---

[4] Employment Policy, Def.'s Ex. D, Doc. 38-4, at 39.

[5] Hobbs Dep., Def.'s Ex. F, Doc. 38-6, at 14.

[6] Reischman Dep., Pl.'s Ex. 13, Doc. 47-13, at 2.

[7] Morris Dep., Pl.'s Ex. 12, Doc. 47-12, at 8.

In the year after he filed his First Charge, Plaintiff continued to work as a land representative without any significant discipline or further complaints. On January 20, 2011, the EEOC issued a Dismissal and Notice of Rights with respect to the First Charge, but Plaintiff did not exercise his right to file a lawsuit.

**B. Southern Star's Reorganization and Reduction in Force**

In 2010 and 2011, Southern Star executed a company-wide reorganization. On October 5, 2010, Morris issued a memorandum to Southern Star's board of directors explaining that the purpose of the reorganization was to streamline operations and to reduce expenses. Before the reorganization, Southern Star had division offices in both Kansas City and Hesston, Kansas, which together oversaw fifteen independent districts. The reorganization closed these two division offices and collapsed the fifteen districts into five geographic regions. The reorganization also organized company leadership into five chief officer positions, including a newly-created "Chief Compliance Officer," who had responsibility for land operations and a variety of compliance matters.

Before this reorganization, Robert Carlton served as Southern Star's Vice President of Human Resources and Administration. When the reorganization took effect in early 2011, Carlton stepped into the newly-created role of Chief Compliance Officer, which managed Southern Star's land operations. Upon assuming this position, Carlton evaluated various efficiency and cost-saving opportunities in land operations. He noted that Southern Star's practice of hiring more employee land representatives and using fewer independent contractor land representatives failed to generate the expected savings. Carlton also believed that the land representatives were too isolated and geographically restricted, which he believed led to inefficiency and an unequal distribution of work.

To address the inefficiencies that he perceived, Carlton decided to implement a reorganization and reduction in force (the "RIF") in land operations. Carlton reduced Southern Star's land operations from six employee land representatives and one land supervisor to only five employee land representatives who would flexibly cover the five newly-created regions. These five employee land representatives would be geographically dispersed to perform work throughout the entire system. Carlton planned to use independent contractors to handle any work overflow or seasonal projects that arose. Morris did not impose any target numbers or staffing requirements for Carlton to execute, and Southern Star issued a Frequently Asked Questions document that assured employees that the reorganization was not a mandate to eliminate a certain number of jobs. As a result of the reorganization within the land department, Southern Star streamlined its use of land representatives and realized a cost savings of approximately $500,000.00.

## C. Reischman's E-mail Concerning Plaintiff

On July 12, 2010, Reischman sent an e-mail to Hobbs and Carlton that said, "After today, I am ready to cut the cord on Fred and Lawanna."[8] Reischman's e-mail did not expressly contemplate Plaintiff's First Charge, but instead referenced Reischman's frustration with Plaintiff's behavior and outburst at a staff meeting earlier that day. In the e-mail, Reischman made multiple indications that his frustration was temporary and that he felt better after writing the e-mail. Neither Hobbs nor Carlton responded to Reischman's e-mail. Reischman also testified that he never followed up on the subject with Carlton or Hobbs because he was only temporarily upset with Plaintiff's outburst and he assumed that the problems would eventually work themselves out.

---

[8] Reischman Dep., at 4.

During this time, Hobbs provided legal advice on a wide range of issues in the Kansas City division. Hobbs testified that in addition to two EEOC charges, "[t]here was a lot of unrest – it was a toxic environment, it was a toxic office environment."[9] Due to these varied issues, Hobbs indicated that "we had management there attempting to work their way through what was a bit of a minefield."[10]

## D. Plaintiff's Termination and Inquiry Regarding Rehire

In accordance with his plans to implement the reorganization and RIF, Carlton demoted the existing Land Supervisor, Terry Blanding, to an employee land representative, thereby eliminating the supervisory position altogether. Carlton then eliminated two of the seven employee land representative positions. As a result, on March 23, 2011, Southern Star terminated Plaintiff and another employee land representative, Welsey Pekarek. Plaintiff was fifty years old when Southern Star eliminated his position. While Carlton reviewed a number of statistics, he testified that his ultimate decision to terminate Plaintiff and Pekarek was based solely on seniority. Southern Star hired Plaintiff and Pekarek in 2008, while the remaining employee land representatives each had at least twenty years of tenure with the company and its predecessors.

In addition to Plaintiff and Pekarek, Southern Star terminated seven other employees as a result of its reorganization and RIF. These seven individuals each held discrete positions that were not shared by others with the same title in the same division. Robert Beaulieu, Richard Reischman, and Chris Ellison each held supervisory and administrative roles at Southern Star's division offices, which were eliminated when Southern Star closed those offices as part of its reorganization. Roy Hershberger, Ken Bengston, and Richard Stocke held managerial or

---

[9] Hobbs Dep., at 7.

[10] *Id.*

technical positions in departments that were eliminated or consolidated through Southern Star's reorganization. Finally, William Wilson was a part-time facility technician when Southern Star determined that this position required a full-time worker. Southern Star offered Wilson a full-time position, but he declined the offer because he wanted to work part-time.

At the time of Plaintiff's termination, Southern Star's Kansas City division had the heaviest workload, and Plaintiff and Pekarek were among the busiest land representatives in the company. After Plaintiff's termination, other employee land representatives absorbed many of Plaintiff's and Pekarek's duties. In June 2011, Southern Star temporarily engaged two independent contractor land representatives to perform seasonal work in the summer months of 2011. Southern Star paid these independent contractors approximately $60,000.00 for their work during those months.

Prior to Plaintiff's termination, Dean Keith served as an employee land representative for Southern Star. In 2008, Keith expressed his desire to retire within several years, so Southern Star engaged one of its Oklahoma land representatives, David Lutz, to become familiar with Keith's duties. In early April 2011, several weeks after Plaintiff's termination, Keith announced his retirement. On April 27, 2011, Plaintiff e-mailed his former supervisor, Terry Blanding, to inquire whether he could be considered for the vacancy. Southern Star advised Plaintiff that it would cover the vacancy with its existing workforce and would not be hiring a new employee land representative to replace Keith. Southern Star did not post the vacancy and has not hired any new employee land representatives since Plaintiff's termination on March 23, 2011.

**E. Southern Star's Treatment of Other Employees**

Plaintiff argues that Southern Star retaliated against three other employees who also lodged internal complaints or filed charges of discrimination: Lawanna Stanley, Janel Rogers,

and Wendy Bowman. According to Plaintiff, Southern Star's alleged treatment of Stanley, Rogers, and Bowman establishes a pattern and practice of retaliation against employees who report unlawful discrimination or retaliation. Southern Star denies that it unlawfully retaliated against these individuals, and it denies that they were similarly situated to Plaintiff.

### 1. Lawanna Stanley

Lawanna Stanley worked for Southern Star as a Division Administrative Coordinator at Southern Star's Kansas City division office. On June 4, 2010, Stanley filed an EEOC charge of discrimination against Southern Star, alleging that she was denied a wage increase, moved to a different workspace, and assigned administrative duties because of her sex. Southern Star denied Stanley's allegations, arguing that her wage increase was not significantly different from previous years and was commensurate with her performance. Southern Star also argued that Stanley's workspace change was part of an office-wide move that relocated several workspaces. Finally, Southern Star asserted that Stanley's counterpart in Southern Star's Kansas City division office, Robert Beaulieu, was expected to perform administrative duties similar to those it assigned to Stanley. On September 16, 2010, the EEOC issued its Dismissal and Notice of Rights, but Stanley did not exercise her right to file a lawsuit against Southern Star.

Stanley remained employed with Southern Star until she voluntarily resigned in March 2011. Stanley submitted testimony that she "resigned from Southern Star only after feeling like [she] had been discriminated and retaliated against and there was no way anything would get better."[11] However, if Stanley had not resigned, she would have been terminated during the 2010 reduction in force, which altogether eliminated her position and the position of Stanley's counterpart in the Hesston division office, Robert Beaulieu. Carlton was not involved in the decision to eliminate the positions of Stanley or Beaulieu.

---

[11] Stanley Dec., Pl.'s Ex. 14, Doc. 47-14, at 1.

### 2. Janel Rogers

Plaintiff claims that Southern Star's treatment of Janel Rogers also evidences a retaliatory pattern of practice. Rogers worked for Southern Star as an engineer. On February 3, 2010, Rogers made a complaint on Southern Star's ethics hotline alleging that her supervisor was harassing her in retaliation for reporting a former employee's unethical conduct. The next day, Rogers complained to Gayle Hobbs that her supervisor took a hostile tone with her, was occasionally angry with her performance, and treated her differently than more experienced employees. Specifically, Rogers alleged that her manager made statements observing that she was a single mother who might be worried about her job.

Southern Star investigated Rogers's complaint and concluded that Rogers was not truthful in her complaints or in her investigatory responses. Southern Star found that Rogers intentionally misrepresented events to deflect her own performance issues and to exaggerate her complaints. During the investigation, Rogers's co-workers confirmed that Rogers was responsible for creating hostility and that Rogers had misrepresented statements of other coworkers in an attempt to create discord. Based on this information, Southern Star's Vice President and Chief Operations Officer, Robert Bahnick, concluded that Rogers initiated her complaint in bad faith, was dishonest during the investigation, and created a hostile environment. Accordingly, Bahnick decided to terminate Rogers.

### 3. Wendy Bowman

Finally, Plaintiff contends that Southern Star's treatment of Wendy Bowman supports his claims. Bowman worked for Southern Star as a District Administrator at its Kansas City office. In the summer of 2010, Bowman issued a complaint to Southern Star's Human Resources Manager and General Counsel, Gayle Hobbs. Bowman complained that Elree Canty, an African

American co-worker, had commented to Bowman about her recent weight loss and said that her husband could not be happy about the fact that she was losing her "boobs and ass."[12]

When Southern Star confronted Canty with this allegation, he adamantly denied it and said that Bowman made the comment about herself. Southern Star interviewed another co-worker, Triep Nguyen, who overheard the conversation and confirmed that it was Bowman, not Canty, who made the comment. Southern Star then confronted Bowman with the accounts of Canty and Nguyen, and Bowman made what Bahnick believed to be racially-charged comments, including "Why are you protecting the boy?"[13] Based on the statements of Canty and Nguyen, Bahnick concluded that Bowman had initiated her complaint in bad faith by intentionally making false allegations of sexual harassment. Bahnick was further troubled by Bowman's use of racially-charged language. For these reasons, Bahnick decided to terminate Bowman.

## F. Plaintiff's Second Charge

On August 4, 2011, Plaintiff filed a second EEOC charge of discrimination against Southern Star (the "Second Charge"), alleging that Southern Star terminated his employment and refused to rehire him in retaliation for filing his First Charge. On December 19, 2011, the EEOC issued a Dismissal and Notice of Rights with respect to Plaintiff's Second Charge. Several months later, on March 8, 2012, Plaintiff initiated this action.

## II.    Summary Judgment Standard

The Court is familiar with the standards governing the consideration of summary judgment. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

---

[12] Hobbs Dep., at 22.

[13] *Id*. at 28.

of law."[14]  An issue is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[15]  A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[16]  In considering a motion for summary judgment, the Court must examine the evidence in a light most favorable to the nonmoving party.[17]

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.[18]  The moving party need not disprove the nonmoving party's claim, but must only establish that the factual allegations have no legal significance.[19]  If this initial burden is met, the nonmovant must then set forth specific facts showing that there is a genuine issue for trial.[20]  In doing so, the opposing party may not rely on mere allegations or denials in its pleadings, but must present significant admissible probative evidence supporting its allegations.[21]  Finally, the Court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[22]

---

[14] Fed. R. Civ. P. 56(c).

[15] *Thom v. Bristol–Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003).

[16] *Id.*

[17] *Harrison v. Wahatoyas, LLC*, 253 F.3d 552, 557 (10th Cir. 2001).

[18] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[19] *Dayton Hudson Corp. v. Macerich Real Estate Co.*, 812 F.2d 1319, 1323 (10th Cir. 1987).

[20] *Celotex*, 477 U.S. at 323.

[21] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

[22] *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

## III.    Analysis

### A.  General Standards Governing Retaliation Claims

Plaintiff asserts two independent claims for retaliation, each of which alleges that Southern Star violated anti-retaliation provisions under Title VII and the ADEA.[23] When a plaintiff offers direct evidence of retaliation, the claim may move forward without being subjected to the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*.[24] When evidence of retaliation is circumstantial, however, courts apply the *McDonnell Douglas* burden-shifting framework.[25] Under this framework, the plaintiff bears the initial burden of establishing a prima facie case of retaliation.[26] To do so, he must generally show that he was subjected to an adverse employment action as a result of engaging in opposition to Title VII or ADEA retaliation.[27] "If a plaintiff can establish a prima facie case, the burden shifts to the employer to assert a legitimate nondiscriminatory reason for its actions."[28] "If it can do so, the burden shifts back to the plaintiff to introduce evidence that the stated nondiscriminatory reason is merely a pretext for discriminatory intent."[29]

---

[23] The relevant portion of Title VII concerning retaliation provides, "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice."  42 U.S.C. § 2000e-3(a).  Likewise, the ADEA provides, "It shall be unlawful for an employer to discriminate against any of his employees or applicants for employment . . . because such individual, member or applicant for membership has opposed any practice made unlawful by this section . . . ."  29 U.S.C. § 623(d).

[24] 411 U.S. 792, 802-05 (1972); *see Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 627 (10th Cir. 2012).

[25] *Id.*

[26] *Daniels*, 701 F.3d at 627 (citing *EEOC v. PVNF, LLC*, 487 F.3d 790, 800 (10th Cir.2007)).

[27] *Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 533 (10th Cir. 1998) (citations omitted).

[28] *Id.*

[29] *Id.* (citing *Simmons v. Sykes Enters.*, 647 F.3d 943, 947 (10th Cir. 2011)).

## B. Plaintiff's Claim for Retaliatory Refusal to Rehire

Plaintiff asserts a claim against Southern Star for retaliatory refusal to rehire. To establish a prima facie case of retaliatory refusal to rehire, a plaintiff must demonstrate that "(1) he belongs to a protected class; (2) he applied and was qualified for a job for which defendant was seeking applicants; (3) despite his qualifications, plaintiff was rejected; and (4) after plaintiff's rejection, the position remained open and the employer continued to seek applicants from persons of plaintiff's qualifications."[30] At the prima facie stage, the burden of establishing these elements is not onerous.[31] However, Southern Star correctly observes that Plaintiff cannot survive summary judgment on the basis of "mere speculation, conjecture, or surmise."[32]

Southern Star argues that summary judgment is appropriate because Plaintiff cannot establish the second and fourth elements of a prima facie case. The Court agrees. A plaintiff cannot prove a prima facie case of retaliatory refusal to rehire when the employer eliminates the position applied for and no applicant is hired.[33] Indeed, retaliatory refusal to rehire applies only when a plaintiff "applied and was qualified for a job *for which defendant was seeking applicants*."[34] Here, it is uncontroverted that Southern Star did not seek a replacement for Keith's former position, and in fact, Southern Star has not hired any new employee land

---

[30] *Henderson v. Excel Personnel Servs.*, 2002 WL 31844678, *1 (D. Kan. Nov. 14, 2002) (citing *Garcia v. Pueblo Country Club*, 299 F.3d 1233, 1238 (10th Cir. 2002)).

[31] *Jones v. United Parcel Serv., Inc.*, 674 F.3d 1187, 1196 (10th Cir. 2012).

[32] *Indep. Sch. Dist. No. I-050*, 661 F.3d 477, 481 (10th Cir. 2011) (quoting *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004)).

[33] *Beams v. Norton*, 256 F. Supp. 2d 1203, 1216-17 (D. Kan. 2003) ("Because the vacancy was cancelled and no applicant hired, the plaintiff is unable to prove a prima facie case of discrimination or retaliation."); *Morgan v. Fed. Home Loan Mort. Corp.*, 172 F. Supp. 2d 98, 112-13 (D.D.C. 2001) ("[T]here can be no finding of an adverse action if there was no vacancy at the time plaintiff applied or the position was never filled.").

[34] *Henderson*, 2002 WL 31844678 at *1 (emphasis added).

representatives since Plaintiff's termination. It is also uncontroverted that Southern Star absorbed the work created by Keith's retirement with its existing workforce.

Nonetheless, Plaintiff asserts that Southern Star has purposefully avoided hiring employees to avoid the appearance of retaliation. Plaintiff suggests that the retirements of two employee land representatives in the summer of 2011 created the need to hire more full-time employees. Plaintiff also criticizes Southern Star's decision to occasionally engage independent contractors instead of rehiring him as a full-time employee land representative. Finally, Plaintiff attempts to introduce inadmissible hearsay testimony from Lawanna Stanley, who allegedly "heard from Jeff Avery . . . that the company was not going to hire any new land reps as long as Fred's case was pending."[35] These arguments constitute mere speculation that cannot withstand summary judgment. More importantly, these arguments simply do not change the fact that Southern Star neither sought nor accepted applications for the position vacated upon Keith's retirement. Because Plaintiff did not apply for "a job for which Southern Star was seeking applicants,"[36] the Court finds that Plaintiff cannot establish a prima facie case of retaliatory refusal to rehire.

## C. Plaintiff's Claim for Retaliatory Discharge

### 1. Direct Evidence

A plaintiff may overcome summary judgment by presenting direct evidence of a defendant's retaliatory motive.[37] Direct evidence often involves oral or written statements of the defendant showing a discriminatory motivation that is directly related to the adverse employment

---

[35] Stanley Dec., at 1. Under Federal Rules of Evidence 801(c) and 802, inadmissible hearsay includes the statements of an out-of-court declarant offered to prove the truth of the matter asserted. Here, because Stanley's statement merely purports to convey the testimony of a separate witness, Jeff Avery, the statement constitutes inadmissible hearsay.

[36] *Henderson*, 2002 WL 31844678 at *1.

[37] *Ramsey v. City & County of Denver*, 907 F.2d 1004, 1008 (10th Cir. 1990).

action.[38]  However, courts must distinguish between statements establishing retaliatory animus in the decision-making process and "stray remarks in the workplace, statements by non-decision-makers, or statements by decision-makers unrelated to the decisional process."[39]

Plaintiff argues that Southern Star's retaliatory motive is evidenced by Reischman's July 12, 2010, email statement that "[a]fter today, I am ready to cut the cord on [Plaintiff] and Lawanna."[40]  Here, the record demonstrates that Carlton, not Reischman, made the decision to terminate Plaintiff.  Further, a full review of the record and Reischman's email suggests that his comment did not contemplate Plaintiff's First Charge, but rather, specifically related to Plaintiff's behavior in a meeting earlier that day.  For these reasons, the Court finds that Reischman's comment constitutes a stray remark by a person unrelated to the decisional process, which cannot qualify as direct evidence to support Plaintiff's claim.

### 2.  Indirect Evidence Under the *McDonnell Douglas* Framework

#### a.  Prima Facie Case

To establish a prima facie case of retaliatory discharge under Title VII and the ADEA, Plaintiff must demonstrate that (1) he engaged in protected activity, (2) he was discharged from employment, and (3) a causal connection exists between his protected activity and his termination.[41]  Here, Southern Star concedes that Plaintiff's First Charge with the EEOC

---

[38] *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1225 (10th Cir. 2000).

[39] *Mitchell v. City of Wichita, Kan.*, 140 F. App'x. 767, 778 (10th Cir. 2005).

[40] Reischman Dep., at 4.

[41] *See Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1228 (10th Cir. 2006).  The Court notes that the Tenth Circuit later rejected part of the analysis in *Haynes*.  *See Bertsch v. Overstock.com*, 684 F.3d 1023, 1029 (10th Cir. 2012) (addressing a restrictive interpretation of materially adverse disciplinary actions).  However, the Tenth Circuit restricted its discussion of *Haynes* to the standard for materially adverse employment actions and did not disturb the standards or analysis concerning causal connections between protected activity and adverse employment actions.  *Id.*

constituted protected activity[42] and that his termination constituted an adverse employment action. However, Southern Star claims that Plaintiff cannot establish a causal connection between his EEOC charge and his termination.

"A causal connection may be shown by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action."[43] "Standing alone, temporal proximity between the protected activity and the retaliatory conduct must be very close in time."[44] Courts have routinely held that a one-year period between protected activity and an adverse action is too remote to support an inference of retaliatory motive.[45] Because Plaintiff filed his First Charge nearly a full year before his termination, these events are too remote to establish causation.

When temporal proximity is alone insufficient to establish a retaliatory motive, the plaintiff must come forward with additional evidence of causation.[46] Here, Plaintiff's additional evidence relates to the alleged weakness of Southern Star's proffered reason for his discharge. Although such evidence is typically considered during the third phase of the *McDonnell Douglas* inquiry, the Tenth Circuit has considered evidence of pretext in the prima facie state of a

---

[42] Initially, Southern Star conceded that Plaintiff engaged in protected activity under the ADEA, but denied that Plaintiff engaged in protected activity under Title VII. However, in its Reply Memorandum (Doc. 54), Southern Star acknowledged for the purposes of its dispositive motion that Plaintiff's EEOC charge constitutes protected activity under the expansive reading of Title VII's "participation clause" adopted in *Vaughn v. Epworth Villa*, 537 F.3d 1147 (10th Cir. 2008).

[43] *Haynes*, 456 F.3d at 1228 (citing *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001)).

[44] *Id.*

[45] *See Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1204 (10th Cir. 2008) (three-month period insufficient to establish causation); *Proctor v. United Parcel Serv.*, 502 F.3d 1200, 1209 (10th Cir. 2007) (four-month period does not support an inference of causation).

[46] *Proctor*, 502 F.3d at 1209.

retaliation claim.[47] In doing so, courts essentially suspend their judgment with respect to prima facie causation until the question has been informed by the remaining phases of the *McDonnell Douglas* inquiry.[48]

### b. Southern Star's Proffered Reason for Terminating Plaintiff

If Plaintiff can establish a causal connection between his protected activity and termination, the burden shifts to the defendant to state a legitimate and nondiscriminatory reason for its actions.[49] "At this stage of the *McDonnell Douglas* analysis, Defendants' burden is 'exceedingly light;' Defendants must merely proffer non-discriminatory reasons, not prove them."[50] Here, Southern Star alleges that it terminated Plaintiff in the course of a company-wide reorganization and reduction in force, and that his selection for termination involved seniority with the company. The Court finds this nondiscriminatory explanation sufficient to satisfy Southern Star's burden at this stage of the inquiry.

### c. Plaintiff's Allegations of Pretext

Because Southern Star has articulated non-discriminatory reasons for terminating Plaintiff's employment, the burden reverts back to Plaintiff to show that "there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual—i.e., unworthy of belief."[51] To show pretext, a plaintiff must produce evidence of "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally

---

[47] *Id.* (citing *Wells v. Colo. Dep't of Transp.*, 325 F.3d 1205, 1218 (10th Cir. 2003)).

[48] *See id.*

[49] *Id.*

[50] *Zamora v. Elite Logistics, Inc.*, 478 F.3d 1160, 1165-66 (10th Cir. 2007); *see also EEOC v. Flasher Co., Inc.*, 986 F.2d 1312, 1317 (10th Cir. 1992).

[51] *Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir. 1995).

find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons."[52] An employee may show pretext in a variety of ways: by showing that the stated reason is false, by showing that the employer acted contrary to a written company policy, or by showing that the employer acted contrary to an unwritten company policy or practice.[53]

In determining whether the proffered reasons for a decision were pretextual, courts must examine "the facts as they appear to the person making the decision to terminate,"[54] in this case, Carlton. "The relevant inquiry is not whether the employer's proffered reasons were wise, fair or correct, but whether it honestly believed those reasons and acted in good faith upon those beliefs."[55] Courts may not act as a "super personnel department" to undo bad employment decisions.[56] "The factfinder must be able to conclude, based on a preponderance of the evidence, that discrimination was a determinative factor in the employer's actions—simply disbelieving the employer is insufficient."[57]

Plaintiff relies on three categories of allegations to argue that Southern Star's proffered reason for terminating him was pretextual. First, Plaintiff asserts that Reischman's "cut the cord" e-mail demonstrates a retaliatory motive. However, much like the above-referenced standards concerning direct evidence, an employer's statements constitute indirect evidence of pretext only if the plaintiff shows a causal nexus between the statement and the adverse

---

[52] *Jones v. Oklahoma City Pub. Sch.*, 617 F.3d 1273, 1280 (10th Cir. 2010) (internal quotations omitted).

[53] *See Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1167–68 (10th Cir. 2007).

[54] *Salguero v. City of Clovis*, 366 F.3d 1168, 1176 (10th Cir. 2004).

[55] *Rivera v. City and County of Denver*, 365 F.3d 912, 925 (10th Cir. 2004).

[56] *Johnson v. Weld County, Colo.*, 594 F.3d 1202, 1211 (10th Cir. 2010).

[57] *Miller v. Eby Realty Group LLC*, 396 F.3d 1105, 1111 (10th Cir. 2005).

employment decision.[58]   Here, Reischman was not a decision-maker with respect to Plaintiff's termination, and his statements did not contemplate Plaintiff's First Charge.   The Court finds that Plaintiff has not established the requisite nexus between Reischman's e-mail and his termination.

Second, Plaintiff makes numerous allegations attempting to prove causation and pretext by challenging the propriety of Southern Star's reorganization and RIF in the absence of a retaliatory motive.   Plaintiff argues that Southern Star unreasonably eliminated two of the busiest employee land representatives in its busiest region during the busiest time of the year, only to engage two independent contractors to perform seasonal work soon thereafter.   Additionally, Plaintiff argues that Carlton's mobile staffing approach differed from what he believed to be a more localized policy for land representatives.   Plaintiff also criticized Carlton for making his decision without consulting the land department, and Plaintiff questions Carlton's decision to reorganize the land department on the basis of seniority.

Neither Plaintiff nor the Court is in a position to interfere with Southern Star's business judgment, and "second-guess[ing] employers' business judgments is not evidence of pretext."[59] "An employer may choose to conduct its RIF according to its preferred criteria of performance . . . and we will not disturb that exercise of defendant's business judgment."[60] Where there is no evidence of impermissible motive in a defendant's reorganization or RIF, a plaintiff's good performance does not create a genuine issue of material fact for the jury.[61]

---

[58] *Power v. Koss Const. Co., Inc.*, 499 F. Supp. 2d 1194, 1204-05 (D. Kan. 2007).

[59] *EEOC v. Picture People, Inc.*, 684 F.3d 981, 989 (10th Cir. 2012); *Furr v. Seagate Tech., Inc.*, 82 F.3d 980, 986 (10th Cir. 1996).

[60] *Rangel v. Sanofi-Aventis U.S., LLC*, 2012 WL 628240, *6 (D. Kan. Feb. 27, 2012) (internal quotations omitted).

[61] *Id.*

Similarly, a court "will not establish rules telling an employer how to conduct a RIF or mandating whom the employer needs to consult before executing a RIF."[62]

In this case, the proper inquiry is not whether Southern Star's actions were optimal or perfectly fair to Plaintiff, but rather, whether Carlton's decisions were honestly guided by legitimate business motives.[63] After reviewing Carlton's sworn testimony, the Court is satisfied that legitimate business considerations motivated Carlton's decision in executing the reorganization. The Court finds that Southern Star's decision to reallocate and mobilize employee land representatives, as well as its decision to engage independent contractors for seasonal projects,[64] fall within the realm of its sound business judgment. This conclusion is further bolstered by the fact that Southern Star actually realized a cost savings of approximately $500,000.00 as a result of its reorganization in the land department. While Plaintiff may personally find Southern Star's decisions questionable or unreasonable, the Court finds Southern Star's reorganization and RIF wholly consistent with its legitimate business objectives. Accordingly, Plaintiff has not convinced the Court that Southern Star's reorganization and RIF, which resulted in the termination of multiple employees, constituted an elaborate ploy to retaliate against Plaintiff for his First Charge, which he filed nearly one year earlier.

Third and finally, Plaintiff argues that Southern Star's treatment of Stanley, Bowman, Rogers gives rise to an inference of causation and pretext in his case. Plaintiff alleges that Southern Star discriminated and retaliated against these employees for making complaints that Southern Star claimed to be false. Because Southern Star also denied the allegations in

---

[62] *Brune v. BASF Corp.*, 41 F. Supp. 2d 768, 774 (S.D. Ohio 1999).

[63] *Rivera*, 365 F.3d at 925.

[64] An RIF plaintiff establishes pretext by showing that his job was not eliminated and that it remained a single, distinct position. *Abuan v. Level 3 Commc'ns, Inc.*, 353 F.3d 1158, 1169 (10th Cir. 2003). The Court notes that Plaintiff's position was eliminated as part of Southern Star's reorganization.

Plaintiff's First Charge, Plaintiff argues that his termination was part of a retaliatory pattern resulting in employees' termination or forced resignation, often under the guise of Southern Star's Policy prohibiting false reports.

Indeed, anecdotal evidence of a defendant's past treatment of other employees is relevant for determining retaliatory intent.[65] However, if an employer's differential treatment of similarly-situated employees is explained by a legitimate motive, such treatment is insufficient to create an inference of discrimination.[66] Additionally, a plaintiff must demonstrate that the circumstances of the other employees are logically or reasonably tied to the decision to terminate the plaintiff.[67] "Anecdotal evidence of discrimination should only be admitted if the prior incidences of alleged discrimination can somehow be tied to the employment actions disputed in the case at hand."[68] "Plaintiff can meet this requirement by showing that the same supervisors were involved in prior discriminatory employment actions."[69] Courts often reject "me too" evidence that involves employees terminated by a different decision-maker.[70]

Southern Star argues that Plaintiff has failed to establish the necessary connection between his termination and Southern Star's treatment of other employees. The Court agrees for two reasons. First, Carlton was the exclusive decision-maker regarding Plaintiff's termination, but he was not involved in any decision-making capacity with respect to the alleged adverse

---

[65] *Bailiff v. Securitas Sec. Servs. USA, Inc.*, 497 F. Supp. 2d 1236, 1245 (D. Kan. 2007).

[66] *Swackhammer*, 493 F.3d at 1168.

[67] *Ortega v. IBP, Inc.*, 1994 WL 373887, *9 (D. Kan. July 1, 1994) (citing *Spulak v. K Mart Corp.*, 894 F.2d 1150, 1156 (10th Cir. 1990)).

[68] *Hinson v. UMB Bank, N.A.*, 2010 WL 2519987, *4 (D. Kan. June 15, 2010) (citing *Heno v. Sprint/United Mgmt. Co.*, 208 F.3d 847, 856 (10th Cir. 2000)) (internal quotations omitted).

[69] *Id.*

[70] *Id.* (citing *Mendelsohn v. Sprint/United Mgmt. Co.*, 587 F. Supp. 2d 1201, 1208 (D. Kan. 2008)).

employment actions regarding Rogers, Bowman, or Stanley.[71] Because Carlton played no role in terminating these other employees, this evidence does not establish causation or pretext in Plaintiff's case.

Second, Southern Star terminated Rogers and Bowman for submitting false claims in violation of its Policy, while Plaintiff's termination did not contemplate the Policy in any way. Further, the Policy does not prohibit claims that are ultimately found to be false or misunderstood; rather, the Policy only prohibits employees from *intentionally* filing false claims. Southern Star concluded that Rogers and Bowman filed false claims intentionally. While Southern Star denied the allegations in Plaintiff's First Charge, it did not assert that Plaintiff intentionally made false allegations. To the contrary, Reischman seemed to assume that Plaintiff made his First Charge in good faith: "Well, I didn't think much of it in the fact that everybody has a right to do what they feel is right."[72] Because the facts surrounding Plaintiff's termination materially differ from the facts concerning these other employees, the Court finds insufficient evidence of a retaliatory pattern to support causation or pretext in this case.

### d. Conclusion Concerning Plaintiff's Indirect Evidence of Retaliation

For the reasons set forth above, the Court finds that Plaintiff has failed to establish that Southern Star's legitimate reasons for termination were pretextual. Additionally, because Plaintiff partially relied upon evidence of pretext to establish the causation element of his prima facie case, the Court further finds no causal nexus between Plaintiff's protected activity and his termination. Therefore, Southern Star is entitled to summary judgment on Plaintiff's claims of retaliatory discharge.

---

[71] The Court notes that Stanley resigned from her position, and therefore, may not have suffered an adverse action necessary for inclusion in an alleged pattern of retaliation.

[72] Reischman Dep., at 2.

**IT IS ACCORDINGLY ORDERED** that Defendant Southern Star's Motion for Summary Judgment (Doc. 38) is **GRANTED**.

**IT IS SO ORDERED**.

Dated this 17th day of June, 2013.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE